IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01980-NYW

LORETTA CASTILLE,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This civil action arises under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401–33 for review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Loretta Castille's ("Plaintiff" or "Ms. Castille") application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income Benefits ("SSI"). Pursuant to the Parties' consent [#13], this civil action was referred to this Magistrate Judge for a decision on the merits. *See* [#19]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. Upon review of the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

## BACKGROUND

    Plaintiff Loretta Castille first filed applications for SSI and DIB benefits in May 2012, claiming an alleged disability onset of August 30, 2010. [#11-3 at 95].[1] These initial applications

---

[1] For consistency and ease of reference, this Memorandum Opinion and Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file,

were denied on September 6, 2012, which was affirmed by an Administrative Law Judge on January 9, 2014. [*Id.* at 95-101]. Then, in June, 2015, Plaintiff filed the applications for SSI and DIB benefits underlying this appeal. [#11-2 at 32]. At the start of the July 5, 2017 hearing before the ALJ, she orally amended the date of onset of her disability to October 5, 2015. [*Id.* at 52]. Plaintiff alleges that her disability began with a fall on that date which worsened her prior symptoms for diabetic neuropathy. [*Id.* at 53]. At the hearing, she claimed she was disabled due to the combined effects of obesity, cataracts, diabetic mellitus with neuropathy, and an ankle sprain/strain. [*Id.* at 36].

At the hearing, the ALJ had before her records regarding Plaintiff's medical history of these conditions—primarily the diabetic mellitus. Specifically, Plaintiff offered two main sources of information, the records and treatment notes of Drs. Costache and Abraham. Dr. Costache has been treating Plaintiff for years and examined Plaintiff on October 5, 2015, the amended date of onset, and treated her sprained foot. [#11-8 at 3]. The records from that date indicate that she was prescribed a specialized boot to help her recover more quickly and avoid further injury and that it was anticipated that she would remain in the boot for 2 weeks and then begin to phase out. [*Id.* at 7]. On November 20, 2015, Plaintiff was examined by Dr. Abraham who reported that her diabetes mellitus was in "excellent control" and who opined that "there appears to be no obvious long-term disability." [*Id.* at 10]. Her blood sugar levels were "doing well." [*Id.*]. Dr. Costache reported on November 23, 2015 that Plaintiff's ankle was improving and that it was time to begin transitioning out of the boot. [*Id.* at 15]. On December 7, 2015, a different doctor—Dr. Matson—

---

using the convention [#___]. For the Administrative Record, the court refers to ECF docket number, but the page number associated with the Record, found in the bottom right-hand corner of the page. For documents outside of the Administrative Record, the court refers to the ECF docket number and the page number assigned in the top header by the ECF system.

reported that Plaintiff still had pain but that her ankle was "overall improving." [*Id.* at 17]. Plaintiff's recovery from the ankle sprain was long and uneven, eventually developing into joint disease, but Dr. Abraham treated Ms. Castille on February 20, 2017 and noted that she was spending six hours out of the boot and should no longer require it within seven to ten days of that opinion. [#11-9 at 41]. Dr. Costache reported that, as of March 2, 2017, Plaintiff's ankle was improving. [#11-10 at 3].

Plaintiff's diabetes mellitus is also reported to be well managed. As noted above, her blood sugar levels were well managed as of November 20, 2015, and although she reported hyperglycemia and lightheadedness on January 28, 2016, she had not eaten that day and felt better by the next day. [#11-8 at 29, 31]. Drs. Abraham and Costache consistently described Plaintiff's diabetes as "controlled." [*Id.* at 41, 45, 50]. Plaintiff's foot was regularly debrided from advanced callouses during these visits, but the debriding process has been sufficient to stabilize the foot. *See, e.g.*, [*id.* at 46, 51; #11-10 at 4].

Plaintiff also has cataracts in both eyes. Medical records indicate that she was "still feel[ing] functional" despite this diagnosis. [#11-9 at 3]. On July 12, 2016, Plaintiff's eye exam revealed excellent sight when corrected with glasses. [*Id.*]. By the time of this visit, however, Plaintiff's foot problems had progressed to joint disease related to her diabetes with related swelling. [*Id.* at 6]. Dr. Abraham reported good control for Plaintiff's diabetes later that July and again in October. [*Id.* at 8, 19]. The most recent record before the court is from Dr. Costache's May 2017 notes reporting that Plaintiff's hypertension and diabetes were both well controlled. [#11-10 at 9, 12].

Plaintiff underwent a Residual Function Capacity ("RFC") from Dr. Kristine Couch from Industrial Rehabilitation Evaluation services on June 21, 2017. [#11-9 at 77]. Dr. Couch reported

3

that Plaintiff "constantly" suffered severe pain sufficient to interfere with even simple work tasks, couldn't walk more than one city block without breaks (although she could walk for up to thirty continuous minutes without resting), and was likely to be absent from work five days or more a week. [*Id.* at 77–81]. Dr. Abraham later signed Dr. Couch's RFC report with some hesitation, noting "It appears that she would like to get disability but I was not asked to sign disability paperwork." [*Id.* at 15]. Dr. Abraham also noted that Plaintiff seemed to be confused and unclear about what she needed the paperwork for. [*Id.* at 16].

Plaintiff had a hearing on her claim for benefits before an ALJ on July 5, 2017. [#11-2 at 49]. At the hearing, she reported that she walked to the office, used public transit, went to church, did her own shopping, and once a week did "about forty" minutes of volunteer gardening at her church. [*Id.* at 69–70, 73, 80]. But Plaintiff's confusion was marked, sometimes giving inconsistent answers or not following a short line of questioning. *See, e.g.*, [*id.* at 78 (stating she has a hard time focusing during conversations), 81 (inconsistent answer on progress to master's degree)].

The ALJ subsequently found that Plaintiff was not disabled. [*Id.* at 33]. She found that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy, right ankle sprain/strain, cataracts, and obesity. [*Id.* at 36]. The ALJ found that Plaintiff's hypertension was not a severe condition as it was controlled with medication. [*Id.*]. The ALJ also found that none of Plaintiff's impairments met the severity benchmarks in 20 C.F.R. Pt. 404, Subpt. P, App. 1, the "Listing of Impairments" ("the Listing"). [*Id.* at 36–37]. Finally, the ALJ determined that Plaintiff retained the ability to perform light, semiskilled work. [*Id.* at 37–43]. Ms. Castille appealed, and the Appeals Council denied review, making the ALJ's determination final for purposes of appeal. [*Id.* at 1]. On August 6, 2018, Plaintiff filed this action. [#1].

4

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *cf. Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). But "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court may not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

Because Plaintiff is proceeding *pro se*, the court liberally construes her pleadings but may not act as her advocate. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). Indeed, although she is not represented by counsel, Ms. Castille must still comply with procedural rules and satisfy substantive law to be entitled to relief. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008) (observing that a party's pro se status does not relieve him of the

obligation to comply with procedural rules); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

***The Five-Step Analysis.*** An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). Additionally, the claimant must prove she was disabled prior to her date last insured. *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844 F.2d at 750. Step three "determines whether the

impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines the maximum amount of work the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751; *see also id.* at 751–52 (explaining the decisionmaker must consider both the claimant's exertional and nonexertional limitations). The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120. The Commissioner can meet her burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99, 1101 (9th Cir. 1999).

***Plaintiff Raises a General Objection.*** Plaintiff, proceeding *pro se*, did not file a traditional opening brief but instead a short, two-page "Discovery" brief. [#15]. The court accepted it as her Opening Brief and directed Ms. Castille to the Federal Pro Se Clinic. [#16]. The Commissioner filed a Response Brief, generally covering all potential sources of Plaintiff's objections to the ALJ's decisions throughout the five-step process outlined above. [#17]. Ms. Castille then filed what was captioned as "Loretta Castille, ProSe Answer To: Defendants Response Brief (Negligence)." [#18]. In the Response, Ms. Castille argues that "The [ALJ's], decision is not . . . [supported by] substantive evidence." [*Id.* at 2]. Although the court cannot act as counsel

7

to Ms. Castille, it interprets this statement as a general challenge to the ALJ's decision because there is nothing else in the pleadings which could be construed as a more specific objection. The court will therefore consider whether the ALJ's adverse findings rest on substantial evidence.

*Analysis.* The court presumes that Plaintiff does not seek to challenge any part of the ALJ's decision which was favorable to her claim, nor does the court interpret Plaintiff's Briefs as challenging the weight given to any healthcare provider's opinion. Rather, the court views the present issue as limited to reviewing those affirmative determinations of the ALJ which were unfavorable to the Plaintiff. Specifically, (1) that Plaintiff has not alleged any severe impairments other than (a) diabetes mellitus with neuropathy, (b) right ankle sprain/strain, (c) cataracts, and (d) obesity, all of which are severe [#11-2 at 36]; (2) Plaintiff does not have any impairment which meets or exceeds the severity of the listed impairments in 20 C.F.R. Part 404, Sub-Part P, Appendix 1 [#11-2 at 36]; (3) Plaintiff's has the residual physical capacity to perform sedentary work, including past work as an appointment clerk and telemarketer [*id.* at 37–38, 43].

*Other Impairments*. Without citation to the record and without specifying which impairments she was referring to, the ALJ determined that an indeterminate class of 'other alleged impairments' did not meet severity or durational requirements to qualify as severe. [*Id.* at 36]. However, the ALJ did specify that this included hypertension as diagnoses by Dr. Abraham, but that this did not rise to a sufficient level because it was managed with medication. [*Id.*]. The Commissioner is similarly non-specific when addressing these issues, merely arguing that the ALJ's finding is supported by substantial evidence. [#17 at 7 & n.5].

The ALJ mentioned hypertension, and the court's review of the record further indicates obesity, edema,[2] onychomycosis,[3] tendinitis,[4] and viral gastroenteritis.[5] [#11-8 at 5, 6, 13, 38; #11-9 at 27]. The court concludes the ALJ's determination was based on substantial evidence. Plaintiff's post-onset hypertension-related medical records are somewhat limited but indicate that her blood pressure was managed with medication and her blood pressure readings were never alarming enough to merit separate discussion in the medical provider's notes. There is no indication of associated complications resulting from this condition. Accordingly, the court finds the ALJ had a substantial basis to find this condition well managed and not severe. All of the other issued noted above are transitory or temporary and noted only once or twice on Plaintiff's medical records; the severity and persistence of each of these conditions simply do not qualify as severe impairments. *Cf. Rose v. Colvin,* No. CIV. 12-5027-JLV, 2013 WL 5442421, at *4 (D.S.D. Sept. 30, 2013) (finding that the ALJ properly characterized the applicant's diabetic-related conditions as non-severe based on their transitory nature). Indeed, subsequent doctor's records do not even include these other conditions as "past medical history." *See, e.g.*, [#11-9 at 29; #11-10 at 7]. The court therefore concludes the ALJ had a substantial basis to reject the other conditions as severe. [#11-2 at 36].

---

[2] "An accumulation of an excessive amount of watery fluid in cells or intercellular tissues." 279130 edema, Stedmans Medical Dictionary (2014).

[3] A fungal infection of the toenail or fingernail. 239800 dermatophytosis, Stedmans Medical Dictionary (2014).

[4] Inflammation of a tendon. 901070 tendinitis, Stedmans Medical Dictionary (2014).

[5] A "highly communicable but rather mild disease of sudden onset . . . [with] a duration of 1–2 days, which affects all age groups; infection is associated with some fever, abdominal cramps, nausea, vomiting, diarrhea, and headache, one or another of which may be predominant." 364250 epidemic nonbacterial gastroenteritis, Stedmans Medical Dictionary (2014).

***Severity of Conditions Acknowledged to be Severe.*** The ALJ found that none of Plaintiff's severe conditions met or exceeded the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, the "Listing of Impairments." [#11-2 at 36–37]. The ALJ found that Plaintiff's ankle sprain/joint disease did not meet this requirement because Plaintiff did not "present with a gross anatomical deformity involving a major peripheral weight-bearing joint, resulting in the inability to ambulate effectively." [*Id.*]. This accurately describes the standard for "major dysfunction of a joint" under the Listing, and the court finds that it is supported by substantial evidence. Plaintiff's medical records indicate that she had "Charcot's Joint Arthropathy in type two diabetes mellitus." [#11-9 at 31]. "Charcot joint," a synonym of "neuropathic joint," is a "destructive joint disease caused by diminished proprioceptive sensation, with gradual destruction of the joint by repeated subliminal injury, commonly associated with tabes dorsalis, diabetic neuropathy, or syringomyelia." 463120 Charcot joint, Stedmans Medical Dictionary (2014); *id.* at 464090 neuropathic joint; *see also id.* at 76140 Charcot arthropathy. Given these definitions and other information in the record that suggested that Plaintiff could walk up to thirty minutes at a time [#11-9 at 77–81] and the fact that Plaintiff testified that she walked to the hearing, the court finds that this decision is supported by substantial evidence. [#11-2 at 69–70 (recounting her walk to the hearing and ability to walk for fifteen minutes at a time)].

The ALJ next found that Plaintiff's cataracts did not meet the criteria in the Listing because "no treating or examining physician of record has reported any of the necessary clinical, laboratory, or radiographic findings specified therein." [#11-2 at 37]. The court finds this decision is supported by substantial evidence as there are no such records before the court at this stage and no indication that the ALJ had but failed to consider the same either. Accordingly, the ALJ did not err in finding that Plaintiff's cataracts did not meet the criteria under the Listing.

10

Finally, the ALJ considered Plaintiff's diabetic neuropathy and found that Plaintiff did not meet the requirements of Listing 11.14. [*Id.*]. Under the Listing, neuropathy qualifies if it is "characterized by disorganization of motor function in two extremities, resulting in an *extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities*." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2, § 11.14 (emphasis added). As noted above, Plaintiff has a diminished ability to walk but the ALJ's determination that it was not as severe as provided in the Listing was supported by substantial evidence because Plaintiff's ability to ambulate, while diminished, far exceeded the impairment recounted in the Listing.

*The ALJ's RFC Determination.* The ALJ determined that Plaintiff, notwithstanding her severe impairments, had the ability to do substantial gainful activity, including her past work as a telemarketer or appointment clerk. [#11-2 at 37–43]. Although Plaintiff reported serious physical impairments, the ALJ found that her self-reported limitations were inconsistent with the opinions of her treating physicians, Drs. Abraham and Costache. [*Id.* at 38]. Though this court finds that some of the ALJ's treatment of these opinions is misplaced because it derives from medical data prior to the amended date of disability onset, October 5, 2015. [*Id.* at 52, 39 (discussing reports and opinions from 2014 and early 2015)], the court nonetheless finds that the ALJ's decision rests on substantial evidence as the ALJ goes on to discuss objective medical data and opinions from the post-onset time-period which amply supports her decision. [*Id.*].

For example, the ALJ noted that Plaintiff's January 13, 2016 x-ray indicated "no acute osseous abnormality." [*Id.* at 39]. The ALJ further noted that Plaintiff's most extreme symptoms were usually accompanied by unusual activity—Plaintiff felt fatigue and lightheadedness, but had not eaten that day and felt better the next; Plaintiff reported discomfort in her feet, but had walked an unusual amount beforehand. [*Id.*]. Plaintiff had been using a diabetic boot and a cane, but was

spending more and more time without the boot as her condition improved. [*Id.* at 40]. On November 20, 2015, post Plaintiff's disability-onset date, Dr. Abraham reported that Plaintiff's diabetes was under "excellent control," an opinion that he and Dr. Costache consistently reiterated over time. [*Id.*; #11-8 at 9–10]. Moreover, Plaintiff's self-reported daily activities, including volunteering at church and self-care and chores around the house, were inconsistent with full disability. [*Id.* at 41].

Based on these findings, the ALJ found that could perform sedentary, semi-skilled work such as telemarketer or appointment clerk. [*Id.* at 43]. This finding is consistent with the testimony of Ashley Byers, the vocational expert, who testified to the same effect. [*Id.* at 85, 86–90]. The court finds that the ALJ's decision is supported by substantial evidence.

There is significant medical support for the ALJ's conclusions regarding Plaintiff's condition. For example, Dr. Abraham treated Ms. Castille and reported that as of February 20, 2017, she was spending six hours out of the boot and should no longer require it within seven to ten days of that opinion. [#11-9 at 41]. Ms. Castille reported to Dr. Abraham that she was "doing well" at a December 29, 2016 visit where her blood pressure and blood sugar numbers were good. [*Id.* at 34–35]. Dr. Costache reported that, as of March 2, 2017, Plaintiff's ankle was improving. [#11-10 at 3]. A day later, Dr. Abraham reported that Plaintiff's diabetes mellitus was "well-controlled." [*Id.* at 6]. On May 4, 2017, Dr. Costache reported that Ms. Castille was "awake, alert, and oriented," that there was "no pain with foot and ankle range of motion," that her hypertension was also "well controlled," and that her "feet are doing better." [*Id.* at 11–13]. On June 1, 2017, Dr. Abraham noted that Ms. Castille was "thinking about going back to school to finish masters." [*Id.* at 13]. Accordingly, the court finds that there is substantial evidence supporting the ALJ's

conclusion that Ms. Castille was not totally disabled and could perform the work semi-skilled, sedentary work described in the RFC.

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED: July 31, 2019

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge